**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
CIRCUITO CERRADO, INC.,

                     Plaintiff,

      - against -

MORGALO CORP. d/b/a EL PATIO CAFÉ,
CAYETANO MORAN and IRNALDO GALO,

                   Defendants.
-----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 10-3338 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**    **PRELIMINARY STATEMENT**

Plaintiff Circuito Cerrado, Inc. ("Plaintiff" or "CCI") commenced this action against Defendants Morgalo Corp. d/b/a El Patio Café ("Morgalo"), Cayetano Moran and Irnaldo Galo (collectively, "Defendants") for violations of the Federal Communications Act of 1934 ("FCA"), codified at 47 U.S.C. §§ 605 and 553. After Defendants failed to answer or otherwise move with respect to the Complaint, Defendants' default was noted by the Clerk and the Plaintiff moved for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure.[1] *See* DE 5-6. Judge Seybert has referred this motion to me for a Report and Recommendation as to whether the motion should be granted, and to determine the appropriate amount of damages, if any, to be awarded to the Plaintiff. *See* DE 8.

---

[1] For a movant to obtain a default judgment, it must complete a two-step process. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once the clerk's certificate of default is issued, the moving party may then make an application for entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b).

## II. BACKGROUND

The Plaintiff entered into a closed-circuit television license agreement whereby it received the exclusive right to exhibit the telecast of the August 12, 2009 CONCACAF World Cup Qualifier Tournament which included the Honduras v. Costa Rica match (hereafter referred to as the "Event") at various commercial locations throughout New York. *See* Compl. ¶ 8. The broadcast of the Event could only be exhibited in a commercial establishment if it was contractually authorized to do so by the Plaintiff. *Id.* ¶ 10. Therefore, the transmission of the Event was electronically coded or "scrambled" and could only be seen clearly after it was decoded with electronic decoding equipment. *Id.* ¶ 12.

Pursuant to the License Agreement, Plaintiff marketed and distributed the closed-circuit rights by contracting with various establishments for a fee. *Id.* ¶ 11. Those establishments which contracted with Plaintiff were provided with the decoding equipment and satellite coordinates necessary to receive the signal of the Event. *Id.* ¶ 14. Defendants, however, did not contract with Plaintiff to obtain the rights to broadcast the Event. *Id.* ¶ 13. Nevertheless, on August 12, 2009, Defendants intercepted and/or received the signal of the Event and then transmitted, divulged and published the same to its patrons. *Id.* ¶ 15.

## III. APPLICABLE STANDARD

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *See* Fed. R. Civ. P. 8(b)(6); *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). However, the fact that a complaint remains unanswered will not

itself suffice to establish liability on its claims since "a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading." *Said v. SBS Elecs., Inc.*, No. CV 08-3067, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010), *adopted as mod. by* 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010). Therefore, "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Id.*

In addition, courts have considered the same factors which apply to a motion to set aside entry of a default: "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.,* No. 02 Civ. 9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also O'Callahan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (finding that courts may consider "numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved [ ] and whether the grounds for default are clearly established or in doubt" when deciding a motion for default judgment) (internal quotations and citation omitted). Ultimately, the decision to grant a motion for default judgment is left to the sound discretion of the district court. *See Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999).

**IV.  DISCUSSION**

    **A.  Default**

As to the first factor, the failure of Defendants to respond to the Complaint, under the present facts, sufficiently demonstrates willfulness. *See Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007). The

Plaintiff submitted certificates of service demonstrating that Defendants were personally served with the Complaint on August 18, 2010.[2] *See* DE 2-4. Defendants neither answered nor responded in any way to the Complaint, nor did they request an extension of time to respond. In addition, the Plaintiff submitted certificates of service confirming that Defendants were served by U.S. Mail with copies of Plaintiff's Request for Entry of Default Judgment, Notation of Default, Affirmation in Support of Default Judgment and the Proposed Default Judgment as well as the Court's Order dated April 7, 2011 directing Plaintiff to submit additional documents supporting its damages claim to the Court. *See* DE 5, 11. Collectively, the court file removes any doubt that the Defendants failure to respond to the Complaint, despite being properly served, was unwillful.

Next, the Court is unable to make a determination whether the Defendants have a meritorious defense since no such defense has been presented to the Court. Although Defendants' default constitutes an admission of all the factual allegations in the complaint as it relates to liability, Plaintiff must nevertheless demonstrate that the uncontested allegations set forth valid claims. Here, the Complaint alleges violations of 47 U.S.C. §§ 553(a)(1) and 605(a). S*ee* Compl. ¶¶ 21-35. Although these sections overlap,

> section 605 applies to the theft of a radio communication whether or not the radio communication is thereafter sent out over a cable network, [while] section 553 applies to communication thefts from a cable network, whether or not the communication originated as a radio communication.

*J&J Sports Prods., Inc. v. 291 Bar & Lounge*, 648 F. Supp. 2d 469, 471 (E.D.N.Y. 2009). However, in light of the Second Circuit's determination that a satellite signal is considered a

---

[2] Furthermore, the Clerk of the Court indicated on the Notation of Default that copies of the Notation were mailed to the Defendants. *See* DE 6.

radio communication under Title 47 (s*ee Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1008 (2d Cir. 1993)), "both prohibit the unauthorized reception of any cable television programming services which originate as satellite-delivered radio communications." *Joe Hand Promotions, Inc. v. Fofana*, No. 06 CV 2099, 2007 WL 2298372, at *4 (citing *Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 434-35 (2d Cir. 2002); *see also J&J Sports Prods. v. Welch*, No. 10-CV-0159, 2010 WL 4683744, at *2 (E.D.N.Y. Nov. 10, 2010) ("Section 553 and 605 apply, respectively, to cable and radio communications, but both provisions apply where a cable-borne transmission originates as a radio transmission.").

In light of the Defendants' default, they have admitted to misappropriating Plaintiff's licensed exhibition of the Event, the transmission of which was electronically coded or "scrambled," when they intercepted, received and transmitted the Event without authorization. Compl. ¶¶ 12-19. Although the Complaint does not clearly state that the Event originated as a satellite signal, Plaintiff notes that in order for the signal to be received, it had to be decoded with electronic decoding equipment along with satellite coordinates. *Id.* ¶¶ 12-14. This reference provides a sufficient basis to establish that the Event originated with a radio transmission and that Morgalo's unauthorized interception of the Event violated Sections 553 and 605. *See 291 Bar & Lounge*, 648 F. Supp. 2d at 472-73.

However, a more difficult question is whether individual liability should be imposed against Defendants Cayetano Moran and Irnaldo Galo, whose only mention in the Complaint is that they are the owners of Morgalo. Compl. ¶ 6. Individual liability under the FCA requires that the individual authorize the underlying violation. *See 291 Bar & Lounge*, 648 F. Supp. 2d at 473; *Welch*, 2010 WL 4683744, at *6. "Put differently, the complaint must establish that the

individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." *291 Bar & Lounge*, 648 F. Supp. 2d at 473 (quoting *Softel, Inc. v. Dragon Medical and Scientific Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)).

Here, the Plaintiff not only fails to allege that Defendants Moran and Galo were present on the night of the violation, but CCI also leaves out the necessary allegation that these individual Defendants authorized or supervised the violation. Courts which have recently addressed the lack of basic pleading in a default setting have sided against imposing individual liability. *See 291 Bar & Lounge*, 648 F. Supp. 2d at 473 (finding that "plaintiff has made no allegation that [individual defendant] was present for the violation, that he authorized or controlled it, or that he reaped commercial profit from it."); *J&J Sports Prods v. Daley*, No. CV 06-0238, 2007 WL 7135707, at *4 (E.D.N.Y. Feb. 15, 2007) ("[T]here is nothing other than speculation to support the conclusion that [individual defendant] played any part in the violations of the FCA committed by [the defendant establishment], and even less to support the conclusion that any role he did play would warrant imposing individual liability."). Conversely, those courts which *have* found individual liability are grounded in somewhat stronger factual contentions than the case at bar.[3] *See Welch*, 2010 WL 4683744, at *6 (finding individual liability where complaint alleges that defendant "was the individual with supervisory capacity and control over activities occurring within the Establishment on [the date of the violation.]"); *J&J Sports Prods.*

---

[3] The one exception appears to be in *Garden City Boxing Club, Inc. v. Extasis Corp.*, No. 07-CV-3853, 2008 WL 3049905 (E.D.N.Y. Aug. 1, 2008), where the court found individual liability on the mere allegation that the defendant owned the establishment. *Extasis Corp.*, 2008 WL 3049905, at *8. However, this finding was acknowledged and dismissed by the court in *291 Bar & Lounge*, which dealt with similar circumstances a year later. *See 291 Bar & Lounge*, 648 F. Supp. 2d. at 473.

*v. Benson*, 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007) (same). Since Plaintiff's only allegation against Defendants Morgan and Galo is mere ownership of the violating entity, I find that Plaintiff has failed to plead a valid claim under Sections 553 or 605 regarding these Defendants.

The last factor to consider is whether the non-defaulting party would be prejudiced if the motion for default were to be denied. Denying this motion would be prejudicial to Plaintiff "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC,* No. 06 Civ. 14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders.,* 2003 WL 1960584, at *3). Since all three factors have been met with regard to Defendant Morgalo, I respectfully recommend to Judge Seybert that default judgment be entered against the Defendant corporation. However, since Plaintiff has failed to plead a valid claim against individual Defendants Morgan and Galo, I further recommend that Judge Seybert decline to award default judgment against these Defendants and dismiss the claims against them.

**B.     Damages**

Although a default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability, a plaintiff must still prove damages. *See Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005). Therefore, the only question remaining is whether a plaintiff has provided adequate support for the relief he seeks. *See Greyhound Exhibitgroup, Inc*., 973 F.2d at 158. The moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* at 159. In addition, the moving party is entitled to all reasonable inferences from the evidence it

offers. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether detailed affidavits or documentary evidence are sufficient. *Action S.A. v. Marc Rich and Co.*, 951 F.2d 504, 508 (2d Cir. 1989). "The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." *LaBarbera v. Les Sub-Surface Plumbing, Inc.*, No. 06-CV-3343, 2008 WL 906695, at *3 (E.D.N.Y. Apr. 3, 2008) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)). In this case, the Plaintiff submitted a memorandum of law in support of its request for judgment by default ("Pl.'s Mem.") with exhibits annexed, including the affidavit of private investigator Earl L. Covington and the affidavit of Juan Martinez, Vice-President of Operations for CCI. The Court finds that pursuant to the applicable case law, Plaintiff's memorandum with the annexed affidavits is sufficient evidence to support an award of damages without a further hearing.

### 1. Statutory Damages

As an initial matter, Plaintiff claims that "it is fair and reasonable" to assess statutory damages against the Defendants pursuant to both Sections 553 and 605. *See* Pl.'s Mem. at 13. However, the law in this Circuit is clear that a plaintiff may recover under only one of the statutes.[4] *See, e.g., 291 Bar & Lounge*, 648 F. Supp. 2d at 472; *Joe Hand Promotions, Inc. v. El*

---

[4] Not only is the law clear on this point, but Plaintiff previously argued this point, unsuccessfully, to this and other courts in this district. *See Circuito Cerrado Inc. v. Pizzeria Y Pupuseria Santa Rosita, Inc.*, --- F. Supp. 2d ----, 2011 WL 923515, at *1 (E.D.N.Y. Mar. 14,

*Norteno Restaurant Corp.*, 2007 WL 2891016, at *3; *Kingvision Pay-Per View, Ltd. v. Autar*, 426 F. Supp. 2d 59, 62 (E.D.N.Y. 2006); *New Contenders, Inc. v. Diaz Seafood Corp.*, 96 Civ. 4701, 1997 WL 538827, at *1 (S.D.N.Y. Sept. 2, 1997) (citing *Int'l Cablevision Inc v. Sykes*, 75 F.3d 123, 129 (2d Cir. 1996)). Because Plaintiff failed to specifically identify under which Section it seeks to recover, the Court will assess damages under § 605 since that provision allows for a greater recovery than does § 553. *See J&J Sports Prods., Inc. v. Alvarez,* No. 07 Civ. 8852, 2009 WL 3096074, at *4 (S.D.N.Y. Sept. 25, 2009).

Section 605(e) of the FCA permits an aggrieved party to elect to recover either actual damages suffered as a result of the violation – and any profits of the violator that are attributable to the violation – or statutory damages not less than $1,000 or more than $10,000 for each violation. *See* 47 U.S.C. § 605(e)(3)(C)(I). "As actual damages frequently prove difficult to establish, plaintiffs generally elect to recover statutory damages instead under 47 U.S.C. § 605(e)." *See 291 Bar & Lounge*, 648 F. Supp. 2d at 474 n.3; *see also Kingvision Pay-Per-View Ltd. v. Olivares*, No. 02 Civ. 6588, 2004 WL 744226, at *3 (S.D.N.Y. Apr. 5, 2004) ("Statutory damages are appropriate where actual damages are difficult to prove."). Here, the Court agrees with the Plaintiff that statutory damages are appropriate in this case.

However, the Plaintiff argues that he is entitled to the full statutory damages in the amount of $10,000. Pl.'s Mem. at 6. "The amount of damages to be awarded pursuant to § 605 rests in the sound discretion of the court." *J&J Sports Prods. v. Hot Shots, Inc.*, No. CV-09-1848, 2010 WL 3522809, at *2 (E.D.N.Y. Apr. 27, 2010); *see also 291 Bar & Lounge*, 648 F.

---

2011); *Circuito Cerrado Inc. v. La Camisa Negra Restaurant & Bar Corp.*, No. 09-CV-5181, 2011 WL 1131113, at *3 (E.D.N.Y. Mar. 7, 2011).

Supp. 2d at 474 ("Section 605 vests the court with broad discretion in determining statutory damages."). Courts in this Circuit apply one of two methods in calculating statutory damages regarding cases involving the unauthorized receipt and exhibition of pay-per-view events.[5] *See 291 Bar & Lounge*, 648 F. Supp. 2d at 474; *Autar*, 426 F. Supp. 2d at 63. Where the exact number of patrons is unknown, courts have awarded a flat sum per violation. *See Autar*, 426 F. Supp. 2d at 63. However, when there is evidence of the number of patrons present at the unauthorized broadcast, "courts multiply the number of patrons present . . . by a specific dollar amount, typically (but not always) the customary residential charge for the pay-per-view event being shown." *El Norteno Restaurant*, 2007 WL 2891016, at *3; *see also 291 Bar & Lounge*, 648 F. Supp. 2d at 474 (calculating damages based on "the number of patrons observed in the defendant establishment" and then multiplying that figure by a set amount). In this District, recent courts have used $54.95 as a starting point since that is the price an individual would have to pay to view the event at home. *See Hot Shots*, 2010 WL 3522809, at *2; *J&J Sports Prods. v. Arhin*, No. 07 CV 2875, 2009 WL 1044500, at *1 (E.D.N.Y. Apr. 17, 2009).

Plaintiff alleges that the unauthorized broadcast occurred on August 12, 2009. *See* Pl.'s. Mem. at 6. Although what constitutes a "violation" is not defined in § 605, "most cases applying the statute in a commercial context have interpreted the showing of an event on a single night as one violation." *Garden City Boxing Club, Inc. v. Perez,* No. 05 CV 3713, 2006 WL 2265039, at *5 (E.D.N.Y. Aug. 8, 2006). Therefore, the Court is only dealing with one § 605 violation here.

---

[5] The Court finds unpersuasive Plaintiff's argument that case law regarding the Copyright Act of 1976 is instructive on determining the amount of statutory damages to award here since there is ample case law on determining statutory damages regarding Federal Communications Act violations.

Furthermore, a private investigator who was present the night of the violation stated that the highest number of patrons present at Defendants' broadcast of the Event was 70. *See* Pl.'s Mem. Ex. A. Multiplying 70 patrons by $54.95 (the residential pay-per-view cost) yields a figure of $3,846.50. This figure, which falls within the allowable statutory damages provided under § 605, is what the Court believes should reflect the statutory damages available to Plaintiff. Accordingly the Court declines to award statutory damages of $10,000, and instead, recommends to Judge Seybert that statutory damages of $3,846.50 be awarded to the Plaintiff.

### 2. *Enhanced Damages*

The Plaintiff maintains that it is proper to award additional damages in the amount of $20,000 pursuant to § 605. *See* Pl.'s Mem. at 13. Section 605 states that

> [i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii). "Willfulness is defined as 'disregard for the governing statute and an indifference to its requirements.'" *J&J Sports Prods. v. Echeverria*, No. 06 CV 2894, 2007 WL 1160423, at *3 (E.D.N.Y. Mar. 16, 2007) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)). It has been determined that "[t]he broadcast of an event without authorization is a deliberate act, and thus establishes willfulness." *Welch*, 2010 WL 4683744, at *4; *Hot Shots*, 2010 WL 3522809, at *2 (same). The Plaintiff alleges that Defendants' interception, receipt and broadcast were done knowingly and unlawfully since the Defendants could not have obtained the transmission of the Event without committing wrongful acts to

11

intercept and/or receive it. See Pl.'s Mem. at 5 and Ex. B, ¶ 9. This Court agrees. *See 291 Bar & Lounge*, 648 F. Supp. 2d at 475 ("[I]t is difficult to see how the defendant could have involuntarily intercepted-and exhibited-the Fight, as the transmission had to be decoded with electronic decoding equipment in order for the signal to be received and displayed."); *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

Courts apply various factors in determining whether a defendant's willful conduct justifies enhanced damages. These include "(i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *Hot Shots*, 2010 WL 3522809, at *2; *see also Welch*, 2010 WL 4683744, at *4. In this action, there is no indication that Defendants are repeat violators. In addition, the only actual damages for which Plaintiff has provided supporting evidence is the licensing fee of $700 which Defendants would have had to pay to lawfully show the Event. *See* Pl.'s Mem. Ex. B, ¶ 8 ("For example, for this particular event, if a commercial establishment had a maximum fire code occupancy of 70 persons, the commercial sublicense fee would have been $700.00."). Lastly, the Affidavit of the private investigator indicated that the Defendant establishment required a $15 cover charge to enter and there was a poster displayed on the front outside window indicating that the Event would be shown. *See* Pl.'s Mem. Ex A.

Taking all these factors into account, the Court finds that Plaintiff is entitled to enhanced damages since (1) the Event was affirmatively and willfully intercepted for financial gain, and (2) there was no way that the broadcast could have been inadvertently intercepted. See *Welch*, 2010 WL 4683744, at *4. However, Plaintiff's contention that damages should be enhanced by $20,000, which is more than 5 times the statutory award, is unreasonable.

Courts typically fix the amount of enhanced damages as a multiple of the statutory damages awarded. *See La Nortena*, 2011 WL 1594827, at *4. The multiples most commonly used by this District are either two or three times the statutory damages. *Compare Kingvision Pay-Per-View v. Vibes Sports Bar and Café, Inc.*, No. 10-CV-127, 2011 WL 1331858, at *4 (E.D.N.Y. Mar. 15, 2011) (enhanced damages equal to three times the statutory damages; *Hot Shots*, 2010 WL 3522809, at *3 (same) *with J&J Sports Prods, Inc. v. Zevallos*, No. 10 CV 4049, 2011 WL 1810140, at *4 (E.D.N.Y. Apr. 22, 2011) (enhanced damages equal to two times the statutory damages); *La Nortena*, 2011 WL 1594827, at *4. After reviewing numerous cases in this District which awarded enhanced damages, the Court finds guidance in *Vibes Sports* which granted enhanced damages equal to three times the statutory damages where statutory damages totaled just over $4,000 pursuant to a calculation of 73 patrons. 2011 WL 1331858, at *4. In light of the similar circumstances between this case and *Vibes Sports* and the fact that Margalo avoided having to pay the licensing fee, collected a cover charge and advertised its willful violation, this Court, in its discretion, finds a proper enhancement of three times the statutory damages. Therefore, I respectfully recommend to Judge Seybert that enhanced damages be awarded to the Plaintiff in the amount of $11,539.50.

### 3. *Pre-judgment Interest*

In addition, the Plaintiff asserts that it is entitled to interest calculated at the statutory rate of 9% per annum running from August 12, 2009 for a total of $3,150. *See* Pl.'s Mem. at 17. However, § 605 does not refer at all to interest and the "majority of courts to have considered the issue have denied an award of prejudgment interest." *See Hot Shots*, 2010 WL 3522809, at *3. Although a few courts in this District have granted pre-judgment interest at a rate of 9% pursuant to N.Y. C.P.L.R. §5004 under similar circumstances, the more recent decisions addressing this issue have denied such requests. *See, e.g., Hot Shots*, 2010 WL 3522809, at *3; *Autar*, 426 F. Supp. 2d at 65. The leading case on this issue, *Kingvision Pay-Per-View Ltd. v. Olivares*, No. 02 Civ. 6588, 2004 WL 744226 (S.D.N.Y. Apr. 5, 2004), denied pre-judgment interest and reasoned that since claims for punitive damages are an exception to pre-judgment interest under the N.Y. C.P.L.R., "[s]tatutory damages under the Communication Act are analogous to punitive damages in that they are designed to deter others from similar infringing activity." *Olivares*, 2004 WL 744226, at *5. Based on this reasoning and the current status of the law on this issue, I respectfully recommend that pre-judgment interest not be awarded to Plaintiff.

### 4. *Costs*

Lastly, the Plaintiff argues that under § 605, it is entitled to an award of $470 in costs and disbursements. *See* Pl.'s Mem. at 16-17. Section 605 expressly provides that if a violation has occurred, the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." *See* 47 U.S.C. § 605(e)(3)(B)(iii). Based on this language, courts in this Circuit have held that under § 605, the award of costs and attorneys'

fees are mandatory. *See Autor*, 426 F. Supp. 2d at 65.[6] Despite the Court specifically directing that Plaintiff provide "[a]ll required documentation in support of any costs . . . claimed" (*see* DE 9, ¶ 4), the Plaintiff has not submitted any documentation to substantiate costs allegedly incurred in this action. However, with regard to the filing fee, the Court can ascertain that Plaintiff paid $350 to file its Complaint which was acknowledged by the Court through receipt #3814. *See* Electronic Order dated July 21, 2010. In light of this information, the Court recommends that Plaintiff be awarded $350 in costs.

V.     **CONCLUSION**

For the reasons set forth above, I respectfully recommend to Judge Seybert that default judgment be entered against Defendant Morgalo in the amount of $15,736, broken down as follows:

- $3,846.60 in statutory damages;
- $11,539.50 in enhanced damages; and
- $350.00 in costs.

I further recommend that the claims against Defendants Moran and Galo be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Joanna Seybert, and to the chambers of the undersigned. Any requests for an

---

[6] However, the Plaintiff has made no request for attorneys' fees in this action.

extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Plaintiff's counsel is directed to serve a copy of this Report and Recommendation upon the Defendants forthwith by overnight mail and first class mail and to file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
July 29, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge